# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division
### IN ADMIRALTY

**CMA CGM S.A.,**

    Plaintiff,

v.                                                     **Civil Action No. 2:19-cv-**

**LEADER INT'L EXPRESS CORP. a/k/a Leader International Express, Inc.**

    Defendant.

SERVE:     Through the Secretary of the Commonwealth
               Registered agent
               Jin Hsieh
               1355 15th Street
               Fort Lee, NJ 07024

## COMPLAINT

CMA CGM S.A., by counsel, files this Complaint against Leader Int'l Express Corp. a/k/a Leader International Express, Inc. ("Leader") for a judgment and an award of damages, and alleges as follows:

### JURISDICTION AND VENUE

1. This action involving a maritime contract for the demurrage and detention of shipping containers booked for ocean carriage from the United States to a foreign country properly lies within the maritime jurisdiction of this Honorable Court pursuant to 28 U.S.C. § 1333 and Federal Rule of Civil Procedure 9(h).

2. 28 U.S.C. § 1332 also brings this action, which seeks damages greater than $75,000 from a citizen of a State for the citizen of a foreign state, within the proper diversity jurisdiction of this Honorable Court.

3. Venue properly lies with this Honorable Court pursuant to a valid forum selection clause within a maritime contract and because a substantial part of the events giving rise to the action occurred within the Eastern District of Virginia.

## PARTIES

4. CMA CGM S.A. is a foreign corporation with a principal place of business in Marseilles, France.  Its agent, CMA CGM (America) LLC maintains its office in the United States at 5701 Lake Wright Drive, Norfolk Virginia.  CMA CGM S.A. and CMA CGM (America) LLC (collectively "CMA") operate as a vessel operating common carrier.

5. Upon information and belief, Leader is a New Jersey corporation with its principal place of business in Fort Lee, New Jersey.  Leader operates as a non-vessel operating common carrier or NVOCC.

6. A tariff, a service contract, and bills of lading govern a contractual relationship between CMA and Leader in this action.

7. CMA published its governing demurrage tariff as required by the U.S. Shipping Act of 1984, as amended by the Ocean Shipping reform Act and the Federal Maritime Commission ("FMC") regulations on or about May 11, 2016, and published said publicly available tariff both via its tariff publisher Descartes, a link to whose website is found on the FMC's website, and at www.cma-cgm.com.  Exhibit CMA 1.

8. CMA published its governing detention tariff as required by the U.S. Shipping Act of 1984, as amended by the Ocean Shipping reform Act and the Federal Maritime Commission ("FMC") regulations on or about July 24, 2016, and published said publicly available tariff both via its tariff publisher Descartes, a link to whose website is found on the FMC's website, and at www.cma-cgm.com www.cma-cgm.com.  Exhibit CMA 2.

9. On or about May 18, 2016, Leader entered into a service contract with CMA, which among other things, governed the booking and use of CMA's cargo containers as well as transportation services and expressly incorporated generally applicable tariff provisions, including, but not limited to the demurrage and detention tariffs referenced herein, on its first page. Exhibit CMA 3A, Title Page and Term 7.

10. CMA and Leader amended the service contract five times in relation to the terms and issues addressed herein. The applicable amendments were dated May 19, 2016, June 15, 2016, June 27, 2016, July 13, 2016, and January 20, 2017, and address, among other things, updated rates. Each amendment expressly incorporated by reference generally applicable tariff provisions, including but not limited to the demurrage and detention tariffs. Exhibit CMA 3B-F.

11. Underlying and controlling tariff provisions are those in effect at the time that CMA receives possession of cargo. Exhibit CMA 3A-F, Title page; Term 7.

12. Leader approved the service contract and all of its amendments by electronic signature.

13. The service contract provisions control over any conflicting tariff provisions.

14. After the parties entered into the service contract, Leader booked several shipments, including use of CMA's containers to accomplish those shipments, and CMA accordingly released its containers to Leader under the terms set out in the service contract, its amendments, and the tariffs they expressly incorporated.

15. Some of the aforementioned booked containers shipped onboard CMA's vessels pursuant to Bills of Lading, but all container bookings remained subject to the contractual terms of the applicable tariffs and the terms of the service contract.

16. The service contract provisions governing choice of law and forum control over the Bill of Lading terms. Exhibit CMA 3A-F Term 12(3); Term 12(14).

17. A Bill of Lading from CMA incorporates the provisions of the governing tariffs.

## THE SERVICE CONTRACT

18. CMA's service contract defines Leader as "Shipper" or "Merchant." Exhibits 3A-F, Title page; Term 12 (7).

19. CMA's service contract defines Demurrage as:

    "[T]he charge, related to the use of equipment [containers] only, the Merchant [Leader] pays for equipment kept beyond the free time allowed by Carrier [CMA] for taking delivery of goods in the port, terminal or depot." Emphasis added. Exhibits CMA 3A-F Term 12(9).

20. CMA's service contract defines Detention as:

    "[T]he charge the Merchant [Leader] pays for detaining Carrier's equipment [containers] outside the port, terminal or depot, beyond the free time." Exhibits CMA 3A-F Term 12(9).

21. CMA's service contract defines Storage Costs as:

    "Those costs related but not limited to quay [dock or berth] rent, charged to both carrier's equipment and Shipper's equipment for containers staying on ground. In the U.S., storage costs are included in Demurrage." Exhibits CMA 3A-F Term 12(9).

22. Storage costs include gate fees charged by a port for containers leaving and entering its facility/premises.

23. CMA's service contract addresses events causing deviation of the service and notifies and binds Leader to the contractual condition that "all extra charges or expenses incurred as a

result of such prohibition are for Shipper's (Leader's) account." Exhibits CMA 3A-F Term 12(12).

24. Prohibitions contemplated by the Service Contract include among other things service disruptions caused by government agencies such as United States Custom and Border Protection, United States Immigration and Customs Enforcement, and United States Department of Homeland Security.

## THE TARIFFS

25. The applicable CMA published tariff terms allow for five days of free time for CMA's equipment (containers). Exhibits CMA 1 and CMA 2.

26. After the expiration of the five days of free time, the applicable published CMA tariff terms identify charges of one hundred sixty and 00/100 Dollars ($160.00) per day for demurrage of CMA standard containers designated for export from all ports of the United States except for the ports of New York. Exhibit CMA 1 – CMDU-100, Rule 200.

27. After the expiration of the five days of free time, the applicable published CMA tariff terms identify charges of one hundred fifteen and 00/100 Dollars ($115.00) per day for the next five days and then one hundred sixty five and 00/100 Dollars ($165.00) per day for detention of CMA standard containers designated for export from all ports of the United States except for the ports of New York. Exhibit CMA 2 – CMDU-100, Rule 300.

## THE UNDERLYING FACTS

28. Leader booked and CMA released 102 containers pursuant to the Service Contract and Tariff.

29. The booking numbers for the containers break down as follows:
    a. NAM2490209A – Twenty-Eight (28) Containers. Exhibits CMA 4A-C.

    b. NAM2490209B – Eighteen (18) Containers. Exhibit CMA 5.

    c. NAM2490289B – Thirty-One (31) Containers. Exhibit CMA 6.

    d. NAM2490268B – Ten (10) Containers. Exhibit CMA 7.

    e. NAM2572802 – Fifteen (15) Containers. Exhibit CMA 8.

30. CMA issued three (3) bills of lading on November 3, 2016, November 17, 2016, and March 24, 2017, to ship among other commodities aluminum pallets from Long Beach, California to Vung Tau, Vietnam in forty nine (49) of the aforementioned booked containers.

31. Bill of Lading NAM2490209A for its respective booking issued on November 3, 2016, and provided for Leader's shipment of twenty eight (28) containers. Exhibit CMA 9.

32. Bill of Lading NAM2572802 for its respective booking issued on November 17, 2016, and provided for Leader's shipment of fifteen (15) containers. Exhibit CMA 10.

33. Bill of Lading NAM2490289B for its respective booking issued on March 2, 2017, and provided for Leader's shipment of six (6) containers. Exhibit CMA 11.

34. After CMA released its containers to Leader the United States Department of Homeland Security, the United States Custom and Border Protection, the United States Immigration and Customs Enforcement and/or other government agencies detained and/or placed a customs hold for exam notice on the containers.

35. Unpaid demurrage, detention, and storage charges owed CMA by Leader for the service disruption totals one million three hundred ten thousand one hundred thirty nine and 68/100 Dollars ($1,310,139.68 USD) and breaks down as follows:

    a. Demurrage – $1,299,097.00

    b. Detention - $8,710.00

  c. Gate fees - $2,332.68

36. CMA has requested and demanded payment of the aforementioned charges from Leader.

37. Leader has not paid the aforementioned charges to CMA.

38. Leader still owes CMA for the detention, demurrage, and gate fee charges sought in this action.

## COUNT ONE – BREACH OF CONTRACT

39. CMA incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs.

40. Leader has breached the terms of the service contract, tariffs and bills of lading and failed to pay CMA for demurrage, detention, and related charges.

41. As a result of Leader's breach, CMA has suffered damages in the amount of one million three hundred ten thousand one hundred thirty nine and 68/100 Dollars ($1,310,139.68 USD).

## RELIEF SOUGHT

WHEREFORE, CMA CGM S.A., respectfully requests this Court to enter judgment against Leader Int'l Express Corp. aka Leader International Express, Inc. and award damages in the amount of one million three hundred ten thousand one hundred thirty nine and 68/100 Dollars ($1,310,139.68 USD) to CMA CGM S.A., and such other charges and costs that accrue including but not limited to pre-judgment interest, post judgment interest, costs, and attorney(s) fees permitted by law; and provide Plaintiff with all such other relief this Court deems just and proper.

            Respectfully Submitted,

            CMA CGM S.A.

/s/
Thomas S. Berkley (VSB No. 40124)
Jeffrey D. Wilson (VSB No. 75734)
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462
Tel: 757-490-3000
Fax: 757-497-1914
tberkley@pendercoward.com
jwilson@pendercoward.com
*Counsel for CMA CGM S.A.*